Our final case for argument today is 23-1736, Palo Alto Networks v. Taasera Licensing. Is it Mr. Hallward Dremeier? Dremeier. Say it. Hallward Dremeier. Hallward Dremeier. Please proceed. Thank you, Your Honor. May it please the Court. Taasera is largely a paper entity, but to the extent that it exists at all, it exists in New York, and it is therefore subject to both general jurisdiction in New York and to specific jurisdiction with respect to this dispute. Taasera is managed from New York. It has only two managers, but only one of those is in the United States, and it is only that manager, John Scahill, whose name appears on any of the documents. It is John Scahill who filed the certificate of formation for Taasera, listing his New York address in doing so. It is John Scahill who registered the assignment of the patents to Taasera, listing his New York address. It is John Scahill, or at least it's an inference, it is John Scahill who registered Taasera's website when it was registered from New York, because that's their only representative in New York. Isn't Taasera incorporated in Texas? It is incorporated in Texas, but it is subject to general jurisdiction not only at the place where it is incorporated, but at its principal place of business. It was alleged in the complaint on information and belief that Taasera actually had its principal place of business in New York, and that's because, as the Supreme Court has held in the Daimler case, that is more of a question, where is the company at home? We know in the statutory context of diversity jurisdiction that that principal place of business is the nerve center test, and Daimler, I think, largely picks that up with the at-home test and their reference to the Perkins case. The context that Taasera has with the state of New York is management of Taasera. It's the management. That's right, it's the nerve center, the sort of brain trust, if you will, for Taasera. It's interesting that you use the term nerve center because it kind of depicts this huge vast of controls and wires and kind of like a Winsor & Wos type character pulling all these levers and everything, but the record doesn't give us any evidence of what's entailed with this management. What is it that this management is doing? Well, we know that Taasera, because of Quest's SEC filings, has no assets other than the patents. We know that those patents were purchased in New York, that when they were registered, they were registered from New York, and the PTO filing with respect to that gives an address in New York for all inquiries about the assignment of those patents to Taasera. Counsel, isn't it the case, though, that for personal jurisdiction, it has to be related to the action, and this action is one for enforcement? So why does acquisition create personal jurisdiction if they're not enforcing in New York? Well, Your Honor, just to be clear, the points I've been making so far are about general jurisdiction, which is a relative inquiry, and to the extent that they are at home anywhere, it's in New York. That's where all their activities occur. Why are they staying at home in Texas? That's where they're registered. Well, but at home is not a fiction. They're serving the patent, right? Aren't they also serving the patent? They are. Their New York attorney is serving the patent. So they're incorporating in Texas? They're enforcing the patent in Texas? That's true, Your Honor. All right. Okay. But all of the decisions took place in New York. The decision to buy? Not the company. That's the CEO or whatever and their lawyers. I mean, are you saying that whenever a company hires a CEO that works remotely or is out of town or hires out-of-town lawyers, that they're somehow located in those places? When that's their only manager, yes. We know that they only have, apart from the two managers, and one of those is in Germany, one of them is in New York. Apart from the two managers, they have one employee. We don't know that employee's name or what that employee does. Well, don't they have an office? We know they're not a manager. Don't they have an office in Plano, Texas? Well, Your Honor, they say they do, but we don't believe so. We've searched on the Internet, and there's no indication that there is such an office. It used to be at their local counsel's office. Now they say they have another, but we know that in Rye, New York, is where they've directed all correspondence about the patents. It is in Rye, New York, where their own website was registered. It's Rye, New York, where the Quest website that actually... That's where their lawyer is. What's that? I mean, are you saying that where somebody's lawyer is is where they do business? I say, Your Honor, here there is not just where their lawyer is. Their lawyer shares an office, a suite, an office suite, with the manager of Tassara. It's in that office suite that their manager, these are the allegations of the complaint, that their manager contracted with their lawyer to bring the prosecution. This is all about general jurisdiction, right? This is all about general jurisdiction. By the way, you mentioned Plano. I'm not going to take up too much of your time on this, but your blue brief has Plano highlighted in yellow as confidential. How can something... And I know it's your... But you need to resolve this, too. How can a place of business be confidential? Your Honor, it was in a document that was the entirety of the document. Yeah, but you can't do that to us. You have to go through every single confidential marquee and determine whether they're valid or not and confer with your client, your opposing counsel. I mean, I read this. This is ludicrous that this is in yellow. I agree, Your Honor. We did not designate any of this as confidential. It was our opposing counsel who did. Yes, but when you file a brief with us, our rules require you to certify that it's confidential, and this can't be confidential. Well, we did not before filing our brief consult with the opposing counsel about what our brief was going to say, but I take your point that perhaps we could have negotiated that after its filing. But I do want to say with respect to specific jurisdiction as well that one of the allegations of the complaint is that there is an ongoing relationship with Daedalus, not just with respect to the purchase of the patents but also their enforcement. That was an allegation that was made on information and belief because we didn't yet have discovery. We asked for a stay so that we could have discovery. We were denied that. At oral argument, the judge asked specifically about that agreement. We said we've asked for it in discovery. We've not been given it. We have since been given that document, and that document bears out every inference to which we are entitled based on that allegation. There is an ongoing relationship that obligates Tassara to enforce these patents, and it is an ongoing relationship that has its locus in New York, Your Honor. But where does it enforce its patents? It has brought the enforcement suits in Texas, but we know that that resolves that issue right there. Well, Your Honor, no, it doesn't, because it certainly indicates that they would be subject to specific jurisdiction in Texas, but that's not the only place where they're subject to specific jurisdiction. They're also subject to specific jurisdiction. They can enforce a patent in other states, in other areas, but in this case here, the record shows it only enforced it in Texas. Well, Your Honor, that's basically a but-for, a causation standard, and New York and federal law both reject a causation standard. Under New York law, the court has been clear that the claim need only be related in some way, in some way arguably connected to the transaction. Here we have a transaction. How is it arguably connected if all we're talking about is an enforcement action? They're incorporated in Texas. They filed in Texas. The fact that they have lawyers that live elsewhere or CEOs that live elsewhere doesn't mean that the company isn't doing enforcement anywhere. Well, because, Your Honor, because the contract in New York, well, that's where their obligation to enforce it takes place. Their obligation to enforce it is in New York, where there was an agreement. This is a little off point, but there were some references in the brief that they filed this infringement action and then they dismissed it, but that kicked off the time for you all to file an IPR. Did you file an IPR? Yes, Your Honor. Independent? Yes, Your Honor. Well, can I ask a question going back? I understood there to be a declaration that asserts that they have both an employee and a principal place of business, an actual office in Plano, Texas. And there's a declaration that says this. So why are you, I don't understand at this point how you're saying, well, we couldn't find it or I don't know what you want me to do with that. Your Honor, when they filed for their certificate of formation, they said that they were located at their local counsel's office in Marshall. Since then, they have said that they are in Plano, but they have never given an address for an office in Plano. There is a declaration. It does not give an address. But there's a declaration, which is evidence, and that declaration says we have an office in Plano, Texas, and we have an employee who works at that office in Plano, Texas. And they have an employee. At this stage in this process, I'm supposed to find, because they didn't give an address or because you think maybe it doesn't exist, I'm supposed to conclude that this affidavit, this person's committed basically a crime? Because it's a sworn affidavit. Your Honor, I'm not suggesting that there's not some location in Plano. The test is principal place of business. By its terms, that is a relative standard. And as I mentioned, it's the Hertz v. Friend case in the Supreme Court. Just to be clear, so you're now not disputing that they have an office in Plano, Texas? Your Honor, they say they have one, but they've never said what it was other than that they exist. It's not that they say they have one. They've presented evidence that they have one, correct? With that barely, that assertion, yes, Your Honor, that they have an office and they have an employee. The only thing we know about that employee, Your Honor, is that employee is not a manager. This is page 42 of the red brief. They say that there are two managers, two, Scahill in Germany and John Scahill in New York. The principal place of business test is a relative test. It asks where is it primarily. And it is primarily where they are managed from, where the decisions are taking place. When their manager sitting in Rye, New York, talks with their lawyer who's sitting in the same suite in New York, they are making the decisions for the company that are where the principal business is done. So do you believe that acquisition of the patent alone in New York, and I understand you're not saying that that's the case here, but the truth is, please, is I have a double. Do you believe that acquisition of the patent in New York creates either general or personal jurisdiction in New York for the company if they are otherwise enforcing it in a different state? Acquisition alone would not be fine. We have alleged that there's an ongoing obligation to enforce. I asked counsel because the, again, the entirety of the Daedalus Agreement was produced to us in an attorney's eyes only fashion. I've asked them if I could cite from it. I was told I could not because it's designated confidential. But I will say in general terms that that agreement makes imposed. No, Your Honor, because it was produced to us, even though we had asked for a stay so we could conduct jurisdictional discovery, that was denied us. So you now want to talk about evidence that is not part of the record decided below, not part of the record to us on appeal. Do you understand what an appellate court does? Yes, absolutely, Your Honor, I do. And what I'm saying is that we made an allegation in our complaint that there is not just a purchase. They keep calling it a purchase agreement, but we have an allegation in our complaint that is not just a purchase agreement. It is an agreement with respect to enforcement of those patents that imposes obligations on TASRA to enforce and that the locus of that agreement is New York. Those are inferences to which we are entitled because we have so alleged and because we were denied discovery. And I am telling you that the discovery has supported it. Yes, Your Honor, goodbye. Mr. Pepperton? May it please the Court. As the bench has correctly pointed out, TASRA is a Texas corporation with its principal place of business in Texas as the two declarations that were submitted under oath recite. So let me ask you this hypothetical. Let's say TASRA is incorporated in Texas. It has an office there that is its attorney's office or some attorney that allows it to be there. But, and again, hypothetical, TASRA is a company that, you know, manufactures whatever, golf clubs. And all of its manufacturing plants, all of the people that work there, all of the people that manage it are in New York. Is New York a place of business for TASRA in that hypothetical? We're not, and I'm talking about this for the purpose of general jurisdiction, not personal jurisdiction, because I think it's different there. Your Honor, if TASRA had manufacturing facilities, employees and other things as posed in your hypothetical, of course it could be sufficient for general jurisdiction, but only if it was still at home there. You can have, as the cases make clear, including Perkins, you can have a company which is not incorporated in the State of New York and who does not have its principal place of business there, and under some exceptional situation, as was the case in Perkins, where you had a company that had to leave the Philippines during the Japanese occupation of the Philippines, World War II. That was an exceptional case. Here there's no exceptional case set forth in the record at all. And, in fact, what the declarations recite, and this is very important, is that no act to... This is a patent licensing agency, or whatever. You want to call it whatever you want to call it. I don't want to get into fighting about this. But they buy patents, and then they assert them or ask for licenses. If that's their business and all of that business is done in New York, and, again, a hypothetical, there may be different facts you want to talk about, but why wouldn't that be similar to manufacturing golf clubs in New York? Well, if all they did was license patents and they did nothing at all in Texas in their principal place of business, but they did absolutely everything in New York, there obviously could be a factual scenario that rises to the exceptional case. I would agree with that. However, here, and I address the court to the record, the submissions are that none of the activities of the company are directed from New York, from the board or from the parent company that with respect to patent licensing and patent litigation, those do not occur in New York. That's what's in the declaration. I would point out that I'm troubled by some statements today with respect to whether or not there's an office in Plano. One of the exhibits that the defendants submitted... Can you explain to me why Plano is marked confidential in our briefs? I can't, Your Honor. I can't. We get a lot of confidential markings, and this one is one of the most ludicrous ones I've seen in a while. Your Honor, there was an exhibit with an address that was produced by the defendants with the address in Texas in Plano that was submitted to the court in opposition to the motion to dismiss, and the address is 101 East Park Boulevard, Plano, Texas. With respect, also troubled that we keep hearing references to the sharing of an office in New York. We are a national law firm with offices in three states and the District of Columbia. We have a Regis facility in Rye, New York, which is a building with many, many dozens of companies. We don't share an office with them. The building has an address. There are that company and many, many others. They're not in our office space. And I think that really goes to the heart of the problem here because the record is bare of any of this supposed information about decisions being made in New York, control being had in New York. That's not in the record. That's information and belief. It's not based in the complaint. So shouldn't we view those factors a favor of the other side? Your Honor, I think not. When the allegations are only upon information and belief and where they're confronted with sworn testimony that those allegations are not accurate, I think the district court at that point has a duty to look at those allegations as to whether they have any basis otherwise they're made up of whole cloth. A plaintiff could allege anything on information and belief if it's contradicted by the sworn evidence, the testimony, the documents, the information, then I don't think it rises to the level of being due that kind of infringement. What I would say, and I think very important here, when we read the Palo Alto opening brief and the reply brief, they criticized the district court for getting the standard wrong and for applying the wrong law. And I think when the panel reads the court's decision, you will see that the district court actually used the words and ultimately concluded the following, that the activities of Tessera in New York, which was the acquisition, were unrelated to the enforcement of the patents in the form. So he uses the word unrelated, and then he goes further and says Does that mean that those acquisitions do not involve a patent that was asserted in Texas? No, the acquisition does, Your Honor, but here's the issue. The law is well settled that when you have a DJ of infringement or non-infringement and validity issues, the question, that lawsuit is about clearing the air, I think the words have been used, clearing the air of the infringement issue. Acquiring a portfolio of patents in a state has nothing to do with clearing the air in a DJ case about the issue of infringement. Can I ask just a big picture question here? I mean, it took me more than a minute to kind of figure this out. Explain to me, just so I make sure I do understand it, why is a judge in the eastern district of Texas deciding whether the southern district of New York does or does not have jurisdiction over a particular case? Your Honor, this is an MDL proceeding. And it was not our MDL petition. We actually opposed centralization to the northern district of California where it was requested. And the panel decided after we went to the oral argument in Washington, Seattle, Washington, that it should be centralized, in fact, but centralized before the eastern district of Texas. So the cases ended up in the eastern district of Texas. So what's going to happen to this case if we were to affirm? What happens to this particular case? Well, if you were to affirm, then the pending case in the eastern district of Texas will continue in the eastern district of Texas where discovery is ongoing. What's pending in the eastern district of Texas? Is it your case? Yes. What happened, Your Honor? They could file a declaratory judgment. Or they could just defend. But they could also file a declaratory judgment action, I assume, in the eastern district of Texas. They are presently defending the CSERA claims of infringement that are now raised in the eastern district of Texas. After they filed, as we heard, the IPRs. What is this about? I mean, there's a PTAB proceeding. Is it because Texas is not going to stay the PTAB and move more quickly than the PTAB? Your Honor, we have an April trial date in these cases. And the cases, as Your Honor knows, move pretty quickly in the eastern district of Texas. Discovery, I think, is weeks from completion. Well, it sounds like you didn't want to be in Texas. You wanted to be in California, right? No, no, no, Your Honor. Somebody wanted to be in California? I don't know. I heard something about Washington, Seattle, California, Texas. New York, I don't even know. I apologize. The CSERA plaintiff in the eastern district of Texas opposed the petition for centralization to the northern district of California. And we said in the – You want to be in Texas. I mean, come on. I mean, we know why you incorporated in the eastern district. You want to be in Texas. That's fine. You're allowed to do that as long as you've got proper venues and everything like that. And they wanted to be in northern district of California, but they didn't get it. Well, Palo Alto, who's the party here, wanted to be in the southern district of New York, which is something I wanted to address with respect to the specific jurisdiction issue. They're not a New York resident. And, in fact, they chastised Judge Gilstrap in their brief for saying that he focused on the part that they're not a New York resident. They don't have their principal place of business in New York. So one might wonder why they brought the case in New York. They brought the case in New York because they wanted to be able to sue not only to CSERA, but Quest, the parent corporation, which owns CSERA and other subsidiaries. There was the bulk of the dispute below was this alter ego theory of personal jurisdiction, which was rejected and is not on appeal. But the reason it's important, I think, to understand the scope of that is that's why they wanted to be in the southern district of New York. The cases in the Federal Circuit and even the Supreme Court, they look to the residence of the plaintiff as an important factor. And, in this case, Palo Alto is not a resident of New York. It doesn't have its principal place of business there. So what is really the interest of the New York courts in this? Where is Palo Alto's principal place of business? Northern District, California. And so it was interesting that everyone was seeking to centralize in the northern district of California. And I think Palo Alto... I take it they must do enough business in the eastern district of Texas to be sued there? They have a place, a regular and established place of business in the eastern district of Texas, sure. This may be a question that I shouldn't be answering to you, but in this case, the plaintiff is presented by the judicial panel of multi-district litigation, MDL. Yes, sir. And they made the decision as to jurisdiction when they transferred, right? They made the decision that, for pretrial, the most convenient place for all parties would be centralized in the eastern district of Texas. To what extent should that impact our decision in this case? Well, I don't think it really resolves the issue of whether Tessera is subject to personal jurisdiction in New York, because I think that's a way... But there is a decision that says the case belongs to Texas. Yes, and it certainly was determined that Texas is a convenient forum and that the parties could litigate in Texas and get fair and justice. And Palo Alto itself has a regular and established place of business there, so it's certainly not unfair to Palo Alto. And I think the panel did reach that conclusion when it did something I don't think the defendants and all of the defendants were supporting, centralization by the MDL. I don't think any of them ever thought that the panel would send them to East Texas, but that's what they did. Thank you. Is there anything further, Mr. Bacote? No, unless the court has some questions, I give up my remaining time. Thank you very much. Judge Rainey, I think your question properly brought us back to the procedural posture of this case and the fact that because we were denied jurisdictional discovery, we are entitled to the benefit of the allegations of our complaint, which allege that their principal place of business is in New York and that they are managed from New York. And we have a basis for alleging that because every document that... Here's the problem I have with your position. It's the complaint. It seems to me that you have appropriate allegations, you have attorney argument, and you have it set up with the right framework, but there's no fruit hanging off of that framework. There's no evidence. You don't back up, and I think this is a close case, but the problem I have is that even when I view your complaint in the light most favorable to you, you just don't have anything to work with, other than just the allegations. Well, Your Honor, I think we're entitled to the allegations and all the fair evidence that could be developed to support them. That's what you're entitled to on the basis when we're doing a motion to dismiss. And so here... You got to get on that note of discovery. Well, of course, we asked for the discovery, and it was withheld from us until after the decision, until after we had filed our notice of appeal. So you're right, Judge Moore, I don't have it in the record here because although we asked for it, they didn't give it to us until after we were before this court. And did you complain to the lower court about that? Well, we... Did you ask for reconsideration in light of it? No, because we had already filed the notice of appeal, and it was before this court as a jurisdictional matter. But, again, the allegations of the complaint are that Tassarich is managed from New York by John Scahill. They actually admit that John Scahill manages Tassarich from New York. They just say that doesn't count because that's, quote, teleworking. But when the company doesn't exist except for on paper, except for this manager who's deciding, as Judge Hughes, you rightly pointed out, where they're going to sue and who they're going to sue, and he's doing all of that from New York, that is where their nerve center is. That is their principal place of business. If we had that, maybe. If we had that, the management team, John Scahill in New York on February 2nd, determined and decided that, you know, sue should be brought in this particular state, or this individual met with others at a restaurant, and there they made the decision to bring another suit in California. But we don't have that. We just don't have that. It's managed. Well, we allege... No, we don't just allege that it's managed. We allege that every document that is signed by Tessera is signed by John Scahill listing his New York address. That's the certificate of formation. That's the registration of the assignment of the patents to Tessera. That's the registration of Tessera's website, not Quest's website, but Tessera's website, and that is the agreement with Daedalus. All of these things are signed by John Scahill in New York. Counsel, we have your argument. I thank both counsels. This case is taken under submission. Thank you. All rise. The Honorable Court is adjourned from day to day. Thank you. And if you'll please remain seated, we'll have a quick Q&A with the law clerks and the judges, and then in about 5 to 10 minutes, a Q&A with the judges.